IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**NESHON AUSTIN,**

                  **Plaintiff,**

v.

**RECOVER-CARE HEALTHCARE, LLC,**

                  **Defendant.**

Case No. 23-4037-DDC-RES

**MEMORANDUM AND ORDER**

Plaintiff Neshon Austin, proceeding pro se,[1] sues defendant Recover-Care Healthcare, LLC for open account and breach of contract. This matter comes before the court on defendant's Motion for Judgment on the Pleadings (Doc. 12). The court previously converted this motion into one seeking summary judgment because defendant submitted materials outside the pleadings. Doc. 21. Defendant argues it's entitled to summary judgment because it never entered into a contract—or relationship of any kind—with plaintiff or her business. According to defendant, plaintiff simply has named the wrong party. While defendant's assertions ultimately may prevail, plaintiff has adduced enough evidence to survive, for now, whether the parties had a contract. The court thus denies defendant's motion. The court explains this decision, below.

---

[1] Plaintiff proceeds pro se. The court construes her filings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court does not assume the role of advocate for the pro se litigant. *Hall*, 935 F.2d at 1110.

I.      **Background**

The following facts are uncontroverted, or, if controverted, are stated in the light most favorable to plaintiff as the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Plaintiff's business, Quality Nursing Services, LLC, (QNS) provided staffing services to nursing homes. On December 20, 2021, QNS entered a written agreement with Blue Valley Nursing Home to provide personnel. *See* Doc. 18-3 (Pl. Ex. 3). QNS also has provided staffing services to Cambridge Place Senior Living. Doc. 12-2 at 1 (Halberstam Aff. ¶ 4). In December 2022, an entity called Cambridge Blue Valley Senior Living, LLC (Cambridge) began operating these two nursing homes. *Id.* (Halberstam Aff. ¶ 3). No written contract exists between QNS and Cambridge for the services QNS provides to the two nursing homes. *Id.* at 2 (Halberstam Aff. ¶ 6). And Cambridge never has had any agreement with plaintiff herself. *Id.*

Despite the absence of written agreement between QNS and Cambridge, Cambridge paid QNS's invoices. Cambridge testified that, at an unknown date, Cambridge received a letter from plaintiff and Gateway Commercial Finance, LLC (Gateway). *Id.* (Halberstam Aff. ¶ 7). The letter is addressed to RecoverCare, LLC. Doc. 12-3 (Halberstam Aff. Ex. 1). The letter constitutes a notice of assignment, informing RecoverCare, LLC that RecoverCare, LLC's "accounts have been assigned to [Gateway] and [Gateway] has purchased all rights, titles and interest in [QNS's] account receivables." *Id.* The letter instructed RecoverCare, LLC "to remit all payments of all present and future invoices due to [QNS] directly to [Gateway] and continue to do so until notified in writing only by Gateway[.]" *Id.* Consistent with these instructions, Cambridge has paid QNS's invoices to Gateway directly. Doc. 12-2 at 2 (Halberstam Aff. ¶ 10). And QNS's invoices come with a disclaimer specifying that QNS's "invoices have been sold and assigned and Payable only to" Gateway. Doc. 12-4 at 3 (Halberstam Aff. Ex. 2).

2

Plaintiff alleges that, on December 20, 2022, plaintiff and defendant entered a verbal and written staffing contract, and defendant agreed for plaintiff to supply healthcare workers to defendant's skilled nursing facilities, including the two nursing homes at issue here.  Doc. 5 at 2 (Am. Compl. ¶ 8).  Plaintiff submitted an affidavit testifying:

> On or about (December 20, 2022) Blue Valley Health and Rehabilitation & Cambridge Place Senior Village under the ownership of Recover-Care Healthcare, LLC entered into a verbal contract agreeing off the terms of the written contract previously standing to be able to continue to provide [healthcare workers] to the two sistering nursing facilities "Cambridge Place Senior Village" and "Blue Valley Health and Rehabilitation" both currently under the ownership of "Recover-Care Healthcare, LLC."

Doc. 18 at 2 (Austin Aff. ¶ 9) (internal quotation marks omitted).  Defendant disputes this assertion.

Defendant Recover-Care Healthcare LLC's sole member testified that defendant "has no involvement in the issues raised in [plaintiff's] Amended Complaint."  Doc. 12-5 at 1 (Margulies Aff. ¶ 3).  And defendant also testified that it doesn't directly own the two nursing homes at issue here.  *Id.* (Margulies Aff. ¶ 4).  Defendant further testified that it has no agreement or account with plaintiff or QNS related to the issues raised in plaintiff's Amended Complaint.  *Id.* at 2 (Margulies Aff. ¶ 5).  And defendant testified it never has had any agreement, account, or other relationship with plaintiff.  *Id.* (Margulies Aff. ¶ 6).  Going even further, defendant testified it never has had any contact with plaintiff or anyone associated with QNS.  *Id.* (Margulies Aff. ¶ 7).  Indeed, defendant testified that it has no employees.  Doc. 20-1 at 1 (Margulies Aff. ¶ 3).  And, according to defendant, Zisha Margulies is the only person authorized to enter into contracts on defendant's behalf.  *Id.* (Margulies Aff. ¶ 4).

Despite defendant's testimony that it has no employees and never has had any relationship with plaintiff, plaintiff has adduced some evidence of her communications with "Recover Care" employees.  In January 2023, Any Paredes of "Recover Care Accounts Payable"

3

asked employees of the two nursing homes for QNS's W-9 form. *See* Doc. 18-4 at 1 (Pl. Ex. 4). Ms. Parades informed the nursing home employees that "every new vendor we are contracted with we need to get their W-9." *Id.* An employee from Blue Valley Nursing Home forwarded Ms. Paredes's request to plaintiff, *Id.*, and plaintiff submitted the requested W-9, Doc. 18 at 2 (Pl. Aff. ¶ 10).

Plaintiff Neshon Austin also had issues with overdue invoices and communicated with "Recover Care" employees about the payment issues. In February 2023, plaintiff sent the following email:



Doc. 18 at 2 (Pl. Aff. ¶¶ 12, 13); Doc. 18-5 at 2 (Pl. Ex. 5).

Plaintiff received the following response to this email:

4



Doc. 18 at 2 (Pl. Aff. ¶¶ 12, 13); Doc. 18-5 at 1 (Pl. Ex. 5).

Plaintiff also testified that Autumn Seifert, one of defendant's employees, cancelled defendant's contract with QNS in March 2023.  Doc. 18 at 2 (Pl. Aff. ¶ 14).  And Ms. Parades acknowledged receipt of QNS invoices for Cambridge Place Senior Living.  *See, e.g.*, Doc. 18-7 at 5, 12–15, 21 (Pl. Ex. 7).  Ms. Parades also acknowledged receipt of QNS invoices for Blue Valley Nursing Home.  Doc. 18-12 at 1–2 (Pl. Ex. 12).

In case there was any doubt that Recover Care was paying QNS, plaintiff also submitted the following email:



Doc. 18-10 (Pl. Ex. 10).  And plaintiff continued to communicate with Mr. King about paying invoices in March 2023.  Doc. 18-18 (Pl. Ex. 18).

Beyond plaintiff's evidence of communications with Recover Care employees, she also has adduced evidence that defendant operated the two nursing homes—Blue Valley and Cambridge Place.  In January 2023, Ms. Parades informed plaintiff in an email, "We took over the Blue Valley and Cambridge facility as of 12/20/22, all invoices with services date starting the 20th should go to Recover Care, if you need to split some invoices and send to prior owner, that's fine by me."  Doc. 18-15 at 2 (Pl. Ex. 15).

The court explains the legal significance of this evidence, below.  But, first, it recites the legal standard governing summary judgment motions.

## II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also In re Aluminum Phosphide Antitrust Litig.*, 905 F. Supp. 1457,

1460 (D. Kan. 1995).  When it applies this standard, the court "view[s] the evidence and make[s] inferences in the light most favorable to the non-movant."  *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245–46 (10th Cir. 2010)).

"An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense."  *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'"  *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).  To meet this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'"  *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)); *see also In re Urethane Antitrust Litig.*, 913 F. Supp. 2d 1145, 1150 (D. Kan. 2012) (explaining that "a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim." (citation omitted)).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.'"  *Id.* (quoting *Jenkins v. Wood*, 81

7

F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013 (1992)).

Finally, summary judgment is not a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. Instead, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

### III.   Analysis

Defendant frames the case this way: "The only issue this Court needs to resolve is whether there is an agreement or contractual relationship between Plaintiff Neshon Austin and Recover-Care Healthcare." Doc. 20 at 1. Defendant asserts that it's entitled to judgment as a matter of law because it never has had any kind of contract, account, or relationship with plaintiff.[2] Doc. 12 at 1. Unfortunately for defendant, plaintiff has adduced evidence from which a reasonable factfinder could determine that defendant and plaintiff had a contract, account, or relationship.

At summary judgment, the defendant bears the initial burden to show "that summary judgment is appropriate as a matter of law." *Kannady*, 590 F. 3d at 1169 (citation and internal

---

[2] Defendant's legal theory goes like this: Plaintiff's two legal claims are for open account and breach of contract and both counts require existence of a contract. And indeed, under Kansas law, an open account claim involves an "express or implied agreement of the parties concern[ing] a connected series of debit and credit entries . . . where the parties intend that the individual items of the account . . . be . . . a continuation of a related series, and that the account shall be kept open[.]" *Spencer v. Sowers*, 234 P. 972, 973 (Kan. 1925). The "existence of a contract between the parties" is an element of a breach of contract claim. *Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (2013). This legal theory isn't at issue here. Instead, on the current record, defendant can't overcome the legal standard governing summary judgment.

quotation marks omitted). To support its motion, defendant submitted an affidavit from Cambridge's CFO. Cambridge's CFO testified that Cambridge began operating the two nursing homes in December 2022, and QNS provided staffing services to Cambridge for the nursing homes. Doc. 12-2 at 1 (Halberstam Aff. ¶¶ 3, 4). And Cambridge's CFO testified that no written contract exists between QNS and Cambridge, nor has Cambridge ever had any agreement with plaintiff herself. *Id.* at 2 (Halberstam Aff. ¶ 6). Cambridge's CFO also explained that it paid QNS's invoices to Gateway since it received the letter from Gateway and plaintiff. *Id.* (Halberstam Aff. ¶ 10). This testimony supports defendant's argument that plaintiff has sued the wrong party.

Also, defendant submitted an affidavit from its sole member. This affiant testified that it has no employees. Doc. 20-1 at 1 (Margulies Aff. ¶ 3). And, according to defendant, the only person with authority to enter into contracts on defendant's behalf is Zisha Margulies. *Id.* (Margulies Aff. ¶ 4). Defendant testified that it "has no involvement in the issues raised in [plaintiff's] Amended Complaint." Doc. 12-5 at 1 (Margulies Aff. ¶ 3). Defendant further testified it doesn't directly own the two nursing homes. *Id.* (Margulies Aff. ¶ 4). And, defendant testified, it has no agreement or account with plaintiff or QNS. *Id.* at 2 (Margulies Aff. ¶ 5). Defendant further testified it never has had any agreement, account, or other relationship with plaintiff directly. *Id.* (Margulies Aff. ¶ 6). Defendant testified it never has had any contact with plaintiff or anyone associated with QNS. *Id.* (Margulies Aff. ¶ 7). This evidence all supports defendant's argument. But its evidence can't shoulder the burden imposed on summary judgment movants.

That's so because plaintiff has adduced evidence that undermines defendant's evidence that the parties never had a contract. Plaintiff is entitled to a favorable construction of the

9

summary judgment record. *Nahno-Lopez*, 625 F.3d at 1283 (citing *Oldenkamp*, 619 F.3d at 1245–46). This principle means that all disputed facts go plaintiff's way. And plaintiff, as a nonmovant, gets the benefit of all reasonable inferences. Under Kansas law,[3] the "question whether a binding contract was entered into depends on the intention of the parties and is a question of fact." *Reimer v. Waldinger Corp.*, 959 P.2d 914, 916 (Kan. 1998). Based on the evidence plaintiff has adduced, plaintiff has created a genuine factual issue whether QNS and defendant had a contract.

Starting with plaintiff's affidavit, plaintiff testified:

> On or about (December 20, 2022) Blue Valley Health and Rehabilitation & Cambridge Place Senior Village under the ownership of Recover-Care Healthcare, LLC entered into a verbal contract agreeing off the terms of the written contract previously standing to be able to continue to provide [healthcare workers] to the two sistering nursing facilities Cambridge Place Senior Village and Blue Valley Health and Rehabilitation both currently under the ownership of Recover-Care Healthcare, LLC.

Doc. 18 at 2 (Austin Aff. ¶ 9) (internal quotation marks omitted). Arguably, the subject of that sentence is the nursing homes. But, viewing this same evidence in plaintiff's favor, she's testified—albeit in an awkward way—that defendant verbally agreed to take over the contract with QNS. Also, plaintiff's emails with "Recover Care" employees support an inference that defendant foots the bill for QNS's services at the nursing homes. When plaintiff had issues

---

[3] Kansas law governs the claims asserted in this diversity action. A "federal court sitting in diversity must apply the choice of law provisions of the forum state in which it is sitting." *Ace Prop. & Cas. Ins. Co. v. Superior Boiler Works, Inc.*, 504 F. Supp. 2d 1154, 1158 (D. Kan. 2007); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). This court is in Kansas, of course, so it applies Kansas choice of law provisions.

When a contractual dispute contests the "substance of [a party's contractual] obligation," Kansas courts apply the choice of law rule known as *lex loci contractus*, or "the law of the state where the contract is made." *Moses v. Halstead*, 581 F.3d 1248, 1252 (10th Cir. 2009) (applying Kansas law). The contract was agreed upon in Kansas and designates Kansas as the governing law. *See* Doc. 18-3 (Pl. Ex. 3). Therefore, the court applies Kansas law to this contract dispute.

getting QNS's invoice paid, Mr. King of "Recover Care" responded that he'd get payment details to her soon, Doc. 18-5 at 1 (Pl. Ex. 5), and, the next day, he emailed plaintiff that he was having checks cut, Doc. 18-10 (Pl. Ex. 10).  Plaintiff also submitted the email in which Ms. Parades requested QNS's W-9 form and told nursing home employees, "every new vendor we are *contracted with* we need to get their W-9."  Doc. 18-4 at 1 (Pl. Ex. 4) (emphasis added).  So, a reasonable factfinder could find a contract existed between QNS and defendant.

Defendant asks the court to disregard this part of plaintiff's affidavit because plaintiff hasn't explained how she could have personal knowledge whether either nursing home is owned by defendant.  Doc. 20 at 2–3.  Defendant also argues that plaintiff has no foundation to testify whether the QNS contract with the nursing homes was defendant's obligation.  *Id.*  As an initial matter, the emails from "Recover Care" employees are enough to create a fact issue about a contract.  And plaintiff's affidavit is admissible evidence because plaintiff has personal knowledge of the relationship between the entities referenced in these emails.

Plaintiff has adduced evidence of a "Recover Care" employee telling her, "We took over the Blue Valley and Cambridge facility as of 12/20/22, all invoices with services date starting the 20th should go to Recover Care[.]"  Doc. 18-15 at 2 (Pl. Ex. 15).  Defendant's own evidence also blurs the line between Cambridge and defendant.  Cambridge's CFO testified that Cambridge received a letter addressed to RecoverCare, LLC.  Doc. 12-2 at 2 (Halberstam Aff. ¶ 7); Doc. 12-3 (Halberstam Aff. Ex. 1).  Though Gateway addressed the letter to "RecoverCare, LLC", Cambridge acted on Gateway's instructions.  Doc. 12-2 at 2 (Halberstam Aff. ¶ 10); Doc. 12-3 (Halberstam Aff. Ex. 1).

Plaintiff also has some knowledge about defendant's organization based on Mr. King's emails.  Plaintiff's evidence, at least for the moment, tells a simple story:  QNS wasn't getting

paid, so plaintiff sent a notice to three Recover Care email addresses, one Blue Valley Health and Rehabilitation email address, one Cambridge Place Senior Village email address, and one Gateway email address. Doc. 18-5 at 2 (Pl. Ex. 5). Mr. King of Recover Care responded, apologized for the delay, and promised to get payment details to plaintiff.[4] Doc. 18-5 at 1 (Pl. Ex. 5). The next day, Mr. King informed plaintiff that Recover Care was having checks cut and would send them out shortly. Doc. 18-10 (Pl. Ex. 10). Plaintiff thus has some personal knowledge of the relationship between these entities. And plaintiff's statement in her affidavit that the nursing homes' contractual obligations became defendant's obligation is supported by some admissible evidence.

Plaintiff's affidavit[5] also alleges a *verbal* agreement. And defendant's own evidence shows that the parties haven't required written contracts over the course of their dealings.

---

[4]   Defendant's sole member testified that defendant has no employees, and only defendant's sole member has authority to enter into a contract on defendant's behalf. Doc. 20-1 at 1 (Margulies Aff. ¶¶ 3, 4). But this doesn't entitle defendant to summary judgment for two reasons.

*First*, plaintiff has adduced evidence of emails from people (other than defendant's affiant) with "Recover Care" email addresses and signatures. This evidence contradicts defendant's evidence and creates a fact issue that the court can't resolve on the current summary judgment record.

*Second*, under Kansas law, an agent with apparent authority can create a contract. "[A]cts and contracts of the agent as are within the apparent scope of the authority conferred on him, although no actual authority to do such acts or to make such contracts has been conferred, are also binding upon the principal." *Bucher & Willis Consulting Eng'rs, Planners & Architects v. Smith*, 643 P.2d 1156, 1159 (Kan. Ct. App. 1982) (citation and internal quotation marks omitted). "An ostensible or apparent agency may exist if a principal has intentionally or by want of ordinary care induced and permitted third persons to believe a person is his or her agent even though no authority, either express or implied, has been actually conferred upon the agent." *Mohr v. State Bank of Stanley*, 734 P.2d 1071, 1075 (Kan. 1987) (citation and internal quotation marks omitted).

So, viewing the summary judgment evidence in the light most favorable to plaintiff and giving her the benefit of all reasonable inferences drawn from this record, a reasonable factfinder could conclude that defendant had employees and plaintiff believed those employees possessed authority to enter into a contract on defendant's behalf.

[5]   The court briefly must mention that plaintiff has submitted two affidavits: one from June 6, 2023 (Doc. 18) and one from June 30, 2023 (Doc. 24-1). In the June 30 affidavit, plaintiff asserts that she "was in a contractual relationship with Recover-Care Healthcare, LLC." Doc. 24-1 at 1 (Pl. Aff. ¶ 1).

Cambridge's CFO testified that Cambridge has no written agreement with QNS for the services QNS provided to the nursing homes.  Doc. 12-2 at 2 (Halberstam Aff. ¶ 6).  But Cambridge's CFO goes on to testify—despite the absence of a written agreement—that Cambridge received invoices from QNS and paid those invoices.  *Id.* (Halberstam Aff. ¶ 10).  So, construing the evidence in the light most favorable to plaintiff, a reasonable factfinder could conclude that defendant formed a verbal contract with plaintiff.  *See Unified Sch. Dist. No. 446 v. Sandoval*, 286 P.3d 542, 546 (Kan. 2012) (defining standard for oral contract formation under Kansas law).

In sum, plaintiff has adduced evidence from which a reasonable factfinder could conclude, on the current summary judgment record, that plaintiff and defendant had a contract.[6]

## IV.     Conclusion

Defendant asserts that it's entitled to judgment as a matter of law because the only issue for the court is the existence of a contract, and the undisputed material facts show no contract ever existed between the parties.  But plaintiff has adduced sufficient evidence to create a triable issue about the existence of a contract between plaintiff and defendant.  The court thus denies defendant's Motion for Judgment on the Pleadings (Doc. 12), which the court construes as a Motion for Summary Judgment.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion for Judgment on the Pleadings (Doc. 12), converted into a Motion for Summary Judgment, is denied.

---

Defendant argues the court should disregard this affidavit because it's a contrary affidavit used to create a sham fact issue and defeat summary judgment.  Doc. 25 at 5–6.  The court disregards defendant's argument because the above summary judgment analysis doesn't require plaintiff's June 30 affidavit to conclude that a fact issue exists about a contract between the parties.

[6]     Because the court concludes that a reasonable factfinder could conclude that plaintiff and defendant had a direct contractual relationship, the court need not consider defendant's argument that it's entitled to summary judgment because, under Kansas law, a parent company isn't liable for the acts of its subsidiaries.

**IT IS SO ORDERED.**

**Dated this 19th day of March, 2024, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
Daniel D. Crabtree
United States District Judge